IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Sedgwick Campbell,<br><br>                      Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>                      Defendant. | Civil Action No. 8:08-2018-CMC-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Sedgwick Campbell, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 41 years old at the time of the decision of the Administrative Law Judge (ALJ). He attended school up to, but did not complete, the seventh grade. (R. at 341). The plaintiff is able to read and write more than his name in English. (R. at 84, 214.) The plaintiff alleges he became disabled on April 13, 1997, due to foot, ankle and leg impairments and depression as a result of multiple injuries he received from an alcohol-related head-on collision with another automobile. (R. at 147-149, 224.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff protectively filed an application for supplemental security income benefits (SSI) on June 21, 2004.[2] (R. at 224.) His application was denied in initial and reconsidered determinations. (R. at 181, 182). An administrative hearing was held on April 27, 2006, before an ALJ. (R. at 334-360). In a decision dated August 17, 2006, the ALJ found that the plaintiff was not disabled within the meaning of the Act. (R. 21-29.) As the Appeals Council denied the plaintiff's request for review (R. at 7-9), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant has not engaged in substantial gainful activity since June 21, 2004, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq*).
>
> (2) The claimant has the following severe impairments: status-post motor vehicle accident and fractures, arthritis and depression (20 CFR 416.920(c)).
>
> (3) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> (4) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to sit six hours in an eight-hour workday, to stand and walk two hours in an eight-hour workday and to frequently lift and carry five pounds with a heaviest weight lifted occasionally of ten pounds, with no climbing or balancing, a sit/stand option at will, no exposure to hazards or operation of foot pedals, a low stress setting (no more than occasional decision-making and changes in the work setting), no requirements for mathematical computation, reading or writing, and the flexibility to prop feet at 45 degrees or more while seated at work.
>
> (5) The claimant is unable to perform any past relevant work based on the residual functional capacity described above (20 CFR 416.965).

---

[2] The defendant represents that the plaintiff previously filed applications for social security benefits in 1998 and 2002. Both were denied during the administrative process and the plaintiff did not appeal.

(6) The claimant was born on July 7, 1965 and was 41 years old on the date the application was filed, which is defined as a younger individual age 18-44 (20 CFR 416.963).

(7) The claimant has a marginal education and is able to communicate in English (20 CFR 416.964).

(8) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c), and 416.966).

(10) The claimant has not been under a "disability," as defined in the Social Security Act, since June 21, 2004, the date the application was filed (20 CFR 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness

3

contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

evidence which a reasoning mind would accept as sufficient to
support a particular conclusion. It consists of more than a mere
scintilla of evidence but may be somewhat less than a
preponderance. If there is evidence to justify a refusal to direct
a verdict were the case before a jury, then there is "substantial
evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to perform a proper Listing analysis; (2) failing to properly assess the plaintiff's credibility; (3) failing to clarify a discrepency between the Dictionary of Occupational Titles and the vocational expert's testimony; and (4) failing to follow Social Security Ruling ("SSR") 83-12. The Court will address each objection in turn.

I. LISTINGS **1.02 & 1.03**

The plaintiff first contends that the ALJ failed to recognize that medical evidence established the presence of a disabling mental impairment listed in Section 1.02 or 1.03 of Appendix 1 to 20 C.F.R. § 404, Subpart P. Section, or Listing, 1.02 states:

> **1.02 Major dysfunction of a joint(s) (due to any cause):**
> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

5

> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. pt. 404, Subpart P, App. 1, § 1.02.

The plaintiff contends that his musculoskeletal impairments satisfy subsection A because they have caused major dysfunction to his weight bearing joints, including his left ankle and right knee. He has directed the Court to exhaustive evidence of alleged loss of function in his weight bearing joints as a result of his impairments. (See R. at 176-77, 312, 323-26, 332, 341 ,345-46, 354.) The defendant rejoins, however, that subsection A requires a showing that the dysfunction results in an "inability to ambulate effectively." 20 C.F.R. pt. 404, Subpart P, App. 1, § 1.02(A). Critically, "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation ***without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities***." 20 C.F.R. pt. 404, Subpart P, App. 1, § 1.00(B)(2)(b) (emphasis added).

The plaintiff quotes extensively from the regulations but notably leaves the above emphasized portion out. More importantly, he has not directed the Court to any evidence either in his brief or response demonstrating that he requires a hand-held device of any kind to independently ambulate. He specifically testified that he did not. (R. at 325.) In fact, he has really not made any response to the defendant's argument in this regard. (See Pl. Resp. Brief.) Accordingly, the plaintiff's impairment does not satisfy all the criteria of Listing 1.02, as required. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

6

The Court would certainly vindicate, through acknowledgment, the plaintiff's generalized frustration that the ALJ's decision in regards to the Listing analysis is markedly scant. But, the ALJ expressly noted, later in the decision, that "there was no indication he [the plaintiff] required an assistive device for ambulation." (R. at 27.) So, it cannot be said that he did not examine or consider the evidence central to determining that he fails to meet the Listing.

The United States Supreme Court has been clear in this regard. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531(emphasis added) (quoting 20 CFR § 416.926(a)). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id*. In other words, the combination of impairments does not meet a Listing simply by virtue of the overall functional impact of those impairments. The plaintiff must still demonstrate how the impairments, when taken together, meet the specific criteria of the Listing in question. He has not.

The plaintiff next contends that the ALJ failed to find that his impairments satisfied the criteria of Listing 1.03. That Listing reads, in relevant part:

> 1.03 Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, **with inability to ambulate effectively**, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. pt. 404, Subpart P, App. 1, § 1.03 (emphasis added).

But, for the identical reasons addressed above, the plaintiff cannot satisfy this Listing either, which also requires a showing of an inability to ambulate effectively. *See id.; see, e.g., Hinley v. Astrue*, 2008 WL 4467156 at *3 (N.D. W. Va. Sept. 30, 2008) (holding that the Magistrate Judge correctly concluded that the ALJ's decision that the claimant failed to meet Listing 1.03 was supported by substantial evidence where the evidence showed that

7

the claimant retained the ability to ambulate without the assistance of a device requiring the use of both hands).

Accordingly, the ALJ committed no reversible error in regards to his Listing analysis.

## II. THE PLAINTIFF'S CREDIBILITY

The plaintiff next contends that the ALJ failed to properly assess the credibility of his subjective complaints of pain and misapplied the prevailing law.

The plaintiff was in a head-on automobile collision, in April 1997. He suffered injuries, including: a collapsed lung, lacerations to the face, and a crushed right heel. (R. at 311.) His right leg was trapped in the wreckage and he lost some muscle in his leg that had to be taken from his thigh to reconstruct it. (R. at 312.) As a result, a plate and screws were placed in his heel. The plaintiff also testified to some knee injuries. (R. at 312).

Regarding the plate put in his right heel, the plaintiff claims that it causes both numbness and pain. (R. at 347.) The plaintiff claims that it hurts to walk. (R. at 348.) He claims to be able to sit for only about 30 to 40 minutes before having to get up. (R. at 348-49.) The plaintiff elevates his legs while sitting to obtain relief from the pain. (R. at 348-349.) Cloudy weather, lifting something too heavy, and getting in and out of tall vehicles all cause him pain. (R. at 349).

The plaintiff testified that he cooks simple things in the kitchen, and his table and chair are always close if he needs to sit down. (R. at 352). He does a small amount of chores; his daughter helps him. (R. at 353.) He does not do yard work. *Id*. He goes grocery shopping but to a store where a lot of walking is not required. *Id*. The plaintiff watches television, but noted that the best position for this was lying down. (R. at 353-354).

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594 (emphasis added). First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id*. at 596.

The plaintiff contends that although the ALJ found evidence that, at step one, reflected impairments that were reasonably capable of producing the pain and symptoms alleged (R. at 26), the ALJ proceeded to improperly discount the plaintiff's subjective testimony because there was an absence of objective findings in support. The Court disagrees that this fact alone constitutes reversible error. First, the ALJ recognized the appropriate framework and applied it. (R. at 2-27.) Second, it is wholly permissible for the ALJ to consider the presence or absence of objective medical evidence at the second step of the analysis. "While objective evidence is not mandatory at the second step of the test, this is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are." *Craig*, 76 F.3d at 595.

The plaintiff more specifically disputes that the reasons articulated, at step two, for diminishing his credibility are not substantial. He first complains that the ALJ only summarily stated that his testimony conflicted with the medical records. The Court would agree that the analysis is not overly thorough. (R. at 27.) And, in fact, the only contradiction the defendant can articulate on appeal is that the plaintiff elevated his legs when a doctor had never so expressly instructed. But this is no contradiction at all. The plaintiff has testified that he can only sit for so long and must adjust his position. (R. at 348.) He further testified that elevating his legs gives him some relief. *Id*. The Court is at a loss why these representations would have to be expressly recommended by a doctor. The plaintiff does not claim that elevating his legs was, in fact, recommended by his doctor

9

– in other words a lie. He is simply testifying to the degree of his discomfort and what helps him to alleviate it. Moreover, the ALJ found the plaintiff's need to elevate his legs at least credible enough to justify including it in the plaintiff's RFC. (R. at 24.)

The defendant would rely on *Lee v. Sullivan*, 945 F.2d 687, 692 (4th Cir. 1991), to contend that the lack of a physician recommendation creates some notable inconsistency upon which to reduce the plaintiff's credibility. But, in *Lee*, the plaintiff was actually trying to have a specific limitation, included in the hypothetical given to the vocational expert, that the plaintiff be permitted to recline several times a day during work. *Id*. That is not the posture of the plaintiff's position here. The defendant would have the Court agree that it is substantial evidence to find the plaintiff generally noncredible simply because he testified that he elevates his legs in spite of the fact that a doctor had not specifically instructed. This seems too thin a reed upon which to rely. It just does not bear in any meaningful way on the plaintiff's truthfulness. And the ALJ pointed to no other consistencies between his testimony and the medical record. (R. at 27.)

The ALJ, however, did identify other considerations. The ALJ noted the plaintiff's ability to perform some basic work activities (R. at 27). (See R. at 27, 133, 137, 236, 313-14, 316, 342-43.) The ALJ also noted that the plaintiff did not take any prescribed medications but only Aleve, as needed. (R. at 27.) The ALJ found this fact inconsistent with severe, incapacitating pain. *Id*. While conceding that the plaintiff did not testify to engaging in substantial daily activities, the ALJ did point to some activities, including driving, shopping, cooking, and church, as evidence of more functionality than the plaintiff would claim. *Id*.

The Court thinks the issue is a close one. The plaintiff's prior attempts at work, noted by the ALJ, were largely all thwarted by pain. (See, e.g., 313-14.) And, as stated, it really cannot be argued that the plaintiff performs daily activities strongly indicative of someone who can work. Although he can drive, the plaintiff represents that he does not own a car. Friends take him shopping. (R. at 323.) So driving would be infrequent. He does not do much housework. (R. at 323.) In making his credibility determination, it was

appropriate for the ALJ to consider the plaintiff's varied activities because they demonstrated how his alleged limitations affected the routine of his life. *See Mickles*, 29 F.3d at 921. While evidence of daily activities may not be determinative on the issue of disability, they may provide significant support for the conclusion that the plaintiff's complaints were not fully credible. *See Craig*, 76 F.3d at 594 (noting the factors to be considered in credibility evaluation process, including evaluation of claimant's activities); SSR 96-7p (daily activities are a factor in assessing credibility). But, in this case, it seems hard to see how the plaintiff's testimony would suggest he was being less than credible.

The Court is somewhat compelled by the prescription drug consideration. The plaintiff testified that he does not take any prescription medicine. (R. at 322.) "An unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility." *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (finding that ALJ did not err by considering inconsistency between the claimant's level of treatment and her claims of disabling symptoms). The plaintiff complains that "financial constraints, lack of medical insurance, and adverse side effects" may be "scenarios" which explain why the plaintiff was "not taking prescribed medication." (Pl. Brief at 24.) But this is not a situation where the plaintiff is being noncompliant with a prescribed medicinal regimen. *See English v. Shalala*, 10 F.3d 1080, 1084 (4th Cir. 1993) (failure to take prescribed medication cited with approval as a factor in discrediting a claimant's testimony). Instead, the plaintiff has testified that he has not been prescribed *any* medicine for his pain and discomfort. (R. at 322.) The plaintiff has not directed the Court to any evidence that the plaintiff was without more serious medication for one of the reasons he generically suggests. It seems fair that the ALJ could have drawn certain conclusions about the severity of the plaintiff's condition as a result.

Even still, the plaintiff clearly suffers from an uncomfortable heel condition. The ALJ's analysis is not markedly persuasive or thorough. The ALJ did not identify any serious inconsistency with the medical records. The plaintiff's daily activities, by the ALJ's own

admission, are not substantial. Typically, the Court is hesitant to reach beyond its bailiwick out of simply an instinctual or even evidentiary sympathy for the plaintiff. The ALJ was in the best situation to observe all of the evidence, including the plaintiff's testimony, and articulated some reasons for his decision. But the Court believes that in light of problems with the ALJ's other bases, it seems that the prescription drug consideration seems, by the narrowest of margins, to not qualify as substantial evidence upon which to rationalize his decision. The Court would likely decline to recommend remand based on the ALJ's credibility analysis, alone. But for reasons which will be discussed below, the Court would recommend remand for inconsistencies between the Dictionary of Occupational Titles and the vocational expert's testimony. Accordingly, on remand, for that issue, the ALJ should reconduct his credibility analysis and more thoroughly explain his conclusions.

### III. DICTIONARY OF OCCUPATIONAL TITLES

The plaintiff next complains that the ALJ erred in accepting the testimony of the vocational expert, when it was inconsistent with the Dictionary of Occupational Titles, ("DOT") Revised, U.S. Department of Labor. (R. at 29.) Specifically, the VE found that the plaintiff could perform the jobs of weight tester, table worker, and/or surveillance system monitor, which exist in significant numbers in the national economy. (R. at 356-57.) The plaintiff argues, however, that those jobs, as defined by the DOT, are not consistent with the ALJ's hypothetical, insofar as the ALJ specifically included the limitation that there could be no requirement of reading, writing, or mathematical computation on the job. (R. at 356.) The plaintiff argues that the jobs cited by the VE, however, all require mathematical and language abilities which exceed the plaintiff's residual functional capacity ("RFC"), as defined by the ALJ. The defendant, in fact, concedes that the jobs of weight tester and surveillance, as defined by the DOT, are beyond the plaintiff's RFC. (Def. Brief at 14.)

The defendant argues, however, that the job of table worker requires only Level 1 reasoning, math, and language skills. *See* DOT 739.687-182, 1991 WL 680217; DOT Appendix C, 1991 688702. The problem, however, is that Level 1 mathematical skills require the claimant to be able to

> Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound.

*Id*. Level 1 language requires the claimant to be able to

> Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
> . . . Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses. . . .

*Id.* The ALJ specifically found, and instructed the VE, that the plaintiff could not perform any work that required reading, writing or mathematical computation. (R. at 27, 356.) Accordingly, there seems to be a clear discrepancy between what the Dictionary of Occupational Titles states that the job requires and what the plaintiff can perform.

The defendant's only real rejoinder is that "Level 1" is the lowest possible classification in the DOT. (Def. Brief at 15.) This response is unsatisfactory. First, it does nothing to actually explain the discrepancy. And, two, it actually has the tendency of implying a conclusion opposite from what is intended: that the plaintiff is, in fact, disabled.

The VE was questioned as to the consistency between his testimony and the DOT in regards to the sit/stand option and low stress limitations included in the hypothetical. (R. at 357.) It appears that no investigation as to the language and math requirements was made, however.

Occupational evidence provided by a VE generally should be consistent with the occupational information provided by the DOT. The ALJ has a duty to ask the VE to identify and explain any conflicts with the DOT. *See* SSR 00-4p. The relevant portion of SSR 00-4p reads as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part

13

> of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p. Accordingly, the ALJ must elicit a reasonable explanation for any "apparent unresolved conflict" between the VE evidence and the DOT before relying on the VE to support a determination about whether the claimant can perform any work. *See id.* A VE's conflicting testimony can only be used if the ALJ finds that it is based on "other reliable publications" or the expert's own "experience in job placement or career counseling." SSR 00-4p, 2000 WL 1898704 at *2; *see also Fisher v. Barnhart*, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (Unpublished).

The ALJ relied on the representation of the VE that his testimony was consistent. (R. at 357.) There, in fact, existed an apparent and unresolved conflict.

A remand, therefore, is necessary for a clarification of such conflict.

## IV.   SSR 83-12

Lastly, the plaintiff contends that the ALJ failed to properly apply SSR 83-12. The plaintiff emphasizes the following portion of SSR 83-12:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferrng work skills to such jobs, he or she would not be found disabled.

> However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. ***Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.***

SSR 83-12 (emphasis added). The plaintiff argues that the ALJ overlooked the fact that unskilled jobs typically do not accommodate an at will sit/stand limitation, like the plaintiff requires, because they tend to be particularly structured. This is what SSR 83-12 expressly recognizes. *See id.*

The plaintiff's concern is unpersuasive. The ALJ included the at will sit/stand limitation in his hypothetical and the VE still found jobs, which the plaintiff could perform. Nothing more is required. *See Walls v. Barnhart*, 296 F.3d 287, 291 (4th Cir. 2002). No "special clarity" is necessary. *Id*. SSR 83-12 "directs the agency to consult with a VE to assess the impact of that option on the occupation base. The Ruling does not prescribe a formula for assessing what jobs are available, and the VE's inclusion of sedentary jobs does not mean he disregarded SSR 83-12's recognition that a sit/stand option negatively impacts the number of unskilled jobs available." *Id*. Accordingly, the ALJ committed no reversible error in regards to SSR 83-12.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits, in certain respects, was supported by substantial evidence. It is, therefore, ORDERED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS<br>
UNITED STATES MAGISTRATE JUDGE

July 28, 2009
Greenville, South Carolina